**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL NO. LKG-24-122** |
| **v.** | * | |
| | * | |
| **DAMONTAY JOHNSON,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its undersigned counsel, hereby submits the following memorandum in aid of sentencing in the above-captioned case, which is scheduled for October 2, 2025, at 10:30 a.m. For the reasons set forth below, the Government requests that the Court impose a sentence of **130 months**, which is the bottom of the applicable Guidelines, and which the Government believes is a sentence sufficient, but no greater than necessary, to achieve the sentencing goals set forth in 18 U.S.C. § 3553.

I.      **Procedural Background and Crimes of Conviction**

On April 11, 2024, Damontay Johnson ("Johnson" or the "Defendant") was charged in a five-count indictment with Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a), Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a), Use, Carry, and Brandish of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A), Possession of a Stolen Vehicle, in violation of 18 U.S.C. § 2313, and Possession of a Stolen Firearm, in violation of 18 U.S.C. § 922(j). (ECF No. 1.) Johnson had his initial appearance on June 5, 2024, and was ordered detained. (ECF Nos. 6, 9.)

Pursuant to a written plea agreement (ECF No. 43 (the "Plea Agreement")), on May 29, 2025, Johnson pleaded guilty to counts two and three of the indictment, which carried for count two, a maximum statutory sentence of 20 years' imprisonment, up to three years on supervised release, and up to a $250,000 fine, and for count three, a mandatory minimum sentence of seven years and a maximum statutory sentence of life imprisonment consecutive to any other term of imprisonment, up to five years on supervised release, and up to a $250,000 fine.

After accepting Johnson's guilty plea and adjudging him guilty, the Court directed the U.S. Probation Office ("Probation") to prepare the Pre-Sentence Investigation Report ("PSR"), which was filed on August 15, 2025.  (ECF No. 48 ("PSR").)  The Court scheduled Johnson's sentencing hearing for October 2, 2025.

## II.    Stipulated Statement of Facts

In the Plea Agreement, the parties stipulated and agreed that, if this case had proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt.

> On March 31, 2022, at approximately 10:23 a.m., a Brinks employee (the "Victim") was refilling an automated teller machine ("ATM") at the Bank of America ("BOA") drive-through at 14601 Baltimore Avenue in Laurel, Maryland. The Victim parked his vehicle, a Brinks armored truck, in the drive-through lane. The Victim kneeled next to the ATM with a black Brinks carrier bag containing $220,000 in United States currency and began to refill the ATM.

> The currency was property of Brinks.  Brinks is a cash management company, and part of a national business, that engages in interstate commerce by, among other things, providing armored transportation of United States currency to businesses that operate within and outside of Maryland.

> While the Victim was trying to refill the ATM, a stolen Dodge Durango, containing the Defendant, **DAMONTAY JOHNSON** ("**JOHNSON**"), and three coconspirators, drove from a shopping center next to the ATM and parked on the 8500 block of Oak Street, parallel to the rear of the Brinks truck. **JOHNSON** and two conconspirators exited the vehicle with firearms, including an AR-15 style pistol and handguns, while the third coconspirator remained in the Durango.

2

**JOHNSON** and the two coconspirators approached the Victim from behind, as the Victim was kneeled by the ATM. **JOHNSON** and one of the coconspirators pointed their firearms at the Victim. The Victim, who saw **JOHNSON** and the coconspirators, put his hands up and stood up. The Victim then tried to run away but was chased by **JOHNSON** and forced to the ground. **JOHNSON** kneeled over the Victim, physically restraining him, while the two conspirators took the Brinks carrier bag with the currency and ran it back to the Durango.

One of the coconspirators ran back to **JOHNSON** and the Victim. He and **JOHNSON** took the Victim's gun belt, which contained a service-issued firearm, three magazines, and a cell phone. The two ran back to the Durango with the belt containing those items, and then **JOHNSON** and the coconspirators fled in the Durango.

By participating in these actions, **JOHNSON** knowingly took and obtained personal property in the presence of the Victim; he took this property against the Victim's will by means of actual and threatened force, violence, and fear of injury, immediately and in the future; and as a result of the **JOHNSON**'s actions, interstate commerce, and an item moving in interstate commerce, were obstructed, delayed, and affected.

Additionally, **JOHNSON** knowingly used, carried, and brandished a firearm during and in relation to the crime of violence described above, in that he used, carried, and brandished the firearm to threaten the Victim with force, violence, and fear of injury, immediately and in the future, in order to take and obtain personal property in the Victim's presence.

Through their actions, **JOHNSON** and his coconspirators took $220,000 in United States currency that belonged to Brinks. They also caused the Victim $1,331.44 in medical expenses and $7,424 in lost income.

*See* Plea Agreement at Attachment A.

## III.    **Sentencing Guidelines**

The Government agrees that the calculations made by Probation within the PSR regarding the advisory U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") are correct. PSR at ¶¶ 19–32. Probation calculated the Defendant's Guidelines within the PSR as follows:

- The applicable base offense level for count two, Interference with Interstate Commerce by Robbery, is **20**, pursuant to U.S.S.G. § 2B3.1;

3

- The adjusted offense level for count two is increased by **2**-levels, pursuant to U.S.S.G. § 2B3.1(b)(4)(B), because a person was physically restrained to facilitate commission of the offense or to facilitate escape;

- The adjusted offense level is further increased by **1**-level, pursuant to U.S.S.G. § 2B3.1(b)(6), because a firearm was taken;

- The adjusted offense level is further increased by **2**-levels, pursuant to U.S.S.G. § 2B3.1(b)(7)(C), because the loss amount exceeded $95,000, but was less than $500,000;

- The adjusted offense level should be reduced by **3**-levels, pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b), because the Defendant has demonstrated acceptance of responsibility for the offense and has assisted authorities in the investigation or prosecution of the Defendant's own misconduct by timely notifying the Government of his intention to enter a plea of guilty;

- The base offense level for count three, Use, Carry, and Brandish a Firearm During and in Relation to a Crime of Violence, is the term of imprisonment required by statute, pursuant to U.S.S.G. § 2K2.4. The minimum statutory term of imprisonment for 18 U.S.C. § 924(c) is five years; and

- The Defendant's prior convictions result in a criminal history score of two and a **criminal history category of II**, pursuant to U.S.S.G. 5A.

Therefore, the Government agrees with U.S. Probation that the Defendant's Guidelines imprisonment range is **130 to 141 months** (46 to 57 months for count two, plus seven years consecutive for count three), based on a total offense level of 22 (for count two), a criminal history category of II, and a minimum consecutive term of seven years' imprisonment (for count three).

## IV.   <u>Section 3553(a) Factors</u>

The Government respectfully submits that a sentence of **130 months** in prison, followed by a five-year term of supervised release, will be sufficient but no greater than necessary in light of the factors articulated in 18 U.S.C. § 3553(a).

### A.     Nature & Circumstances of the Offense

On March 31, 2022, the Defendant and his co-conspirators robbed a Brinks employee at gunpoint, in broad daylight, at the drive-through of a Laurel bank, and chased and forced him to the ground after he tried to run away.  The Defendant kneeled over the employee, physically restraining him, while his co-conspirators took the employee's carrier bag with $220,000 in United States currency.  Then, one of the co-conspirators came back and stole the employee's gun belt, which carried his service-issued firearm, three magazines, and his cell phone.



*Still from the bank's surveillance footage.*

The Defendant and his co-conspirators' actions cost Brinks $220,000, and cost the employee $1,331.44 in medical expenses and $7,424 in lost income.

### B.     History and Characteristics of the Defendant

The Defendant committed the above crime while on supervised probation.  PSR ¶ 37.  He had been convicted a year prior – almost to the day – in the District of Columbia of attempt to carry a pistol without a license.  *Id.*  And he was able to successfully terminate this supervised release <u>after</u> committing the armed robbery above, and had that conviction expunged weeks later. *Id.*

Following his armed robbery, and the expungement of his DC criminal conviction, the Defendant was committed felony theft in Maryland. PSR ¶ 38. The facts of that case suggest the Defendant and a co-conspirator stole a woman's purse from her vehicle while she was inside a Cheverly cleaners. The purse contained the woman's phone, identity documents, credit cards, jewelry, and approximately $10,000. There was also probable cause to believe the Defendant and the co-conspirator committed four other thefts from parked cars in gas stations and parking lots along the Annapolis Road and Chillum Road corridor in Prince George's County.

### C.    Deterrence

Lighter punishment has not specifically deterred the Defendant from graduating to more serious crime. He was given the opportunity to serve no time for his DC firearms conviction. But he went on to commit two more crimes: the armed robbery, and felony theft from parked cars.

As for general deterrence, a longer sentence will signal to the public that this Court will not tolerate armed robbery, particularly when individuals like the Defendant are the ones who threaten others at gunpoint.

### D.    Similarly Situated Defendants

There are no similarly situated defendants in this case. The Defendant is the only one law enforcement was able to bring charges against for his participation in the armed robbery.

### E.    Recommended Term of Supervised Release

The Government seeks the imposition of a five-year term of supervised release for the same reasons as discussed above. A significant period of supervised release will promote respect for the law and protect the public while the Defendant is under supervision. The Defendant has never been charged, nor sentenced, federally and would benefit from federal supervised release.

He was previously on state probation in the District of Columbia, in connection with his firearm offense there, and committed the instant offense while on that probation.  PSR ¶ 37.

## V.    <u>Forfeiture</u>

The Government asks the Court to incorporate into its judgment an anticipated motion for forfeiture of property and preliminary order of forfeiture.

## VI.    <u>Restitution</u>

The Government asks the Court to order restitution in the amount of $228,755.14.  The parties agree that the Defendant and his co-conspirators took $220,000 from Brinks, and caused $1,331.44 in medical expenses and $7,424 in lost income for the victim.  Plea Agreement at 2.

## VII.    <u>Conclusion</u>

For the reasons above, and additional information that may be presented at the sentencing hearing, the Government respectfully requests that the Court impose a term of imprisonment of **130 months**, followed by five years of supervised release, and a restitution order in the amount of **$228,755.14**, which the Government views as sufficient, but no greater than necessary, to achieve the purposes of sentencing.

Respectfully submitted,

Kelly Hayes
United States Attorney

By:    \_\_\_\_\_/s/_____
Joshua A. Rosenthal
William D. Moomau
Assistant United States Attorneys

cc:    Daniel Goldman, Esq.
Cierra Stokes, U.S. Probation Officer

7